delay and expense of a law suit. Such settlements are of frequent occurrence in business matters, and are always upheld when untainted by fraud, mistake or unfair dealing, as in this case. Wilcox v. Howland, 23 Pick. 167; Waller v. Cralle, 8 B. Mon. 11; Eddy v. Herrin, 17 Me. 338; Alexander v. Pierce, 10 N. H. 494.

Another ground urged for setting aside the certificate was, that the amount was grossly exorbitant for the service rendered. In order to defeat the certificate on this ground it was necessary to make it appear clearly and satisfactorily that the amount allowed was so unreasonable as to raise a presumption, or suspicion at least, that the certificate was fraudulently or maliciously made. 2 Pars. Shipp. & Adm. 10. Have we here such a case made out? The service had already been rendered and the dispute was as to how much it was worth. The amount certified by the master was $400, and the estimates of the witnesses ranged all the way from $500 down to $75. This certainly fails to make out such a case as was necessary, under the rule above laid down, to set aside a settlement deliberately made.

Another ground urged was that the matter had been referred for settlement to one Guyle, an agent for the underwriters on the cargo, and he had instructed the master to pay no more than $50. In the first place, this is not consistent with the concession of the master's authority in the premises, already alluded to. In the next place, there is no proof of any such reference. There is some proof that Guyle was somewhat consulted in the matter, but none that it was referred to him for settlement, either formally or informally. In the next place, Guyle had no authority simply by virtue of his agency for the underwriters to direct the master what to do or what not to do in the premises, there having been no abandonment to and of course no acceptance by the underwriters. Insurers are mere strangers, and are not entitled to be heard under such circumstances. The Packet [Case No. 10,654]; United Ins. Co. v. Scott, 1 Johns. 106; see, also, The Boston [Case No. 1,673]. And finally, even if Guyle had any authority in the premises, it extended to the cargo only, and this suit is against the vessel alone.

It results that libellants must have a decree for the bill as certified, with interest from date, and costs of suit. Decree for libellants.

[Amount certified August 14, 1873... $400 00
   Interest to January 25, 1875, one year,
   five months and eleven days, at 7
   per cent. ...................... 40 54

   Decree for ................. $440 54 [2]

SENATOR, The (McCARTY v.). See Case No. 8,686.

[2] [From 7 Chi. Leg. News, 162.]

## Case No. 12,666.

### The SENATOR MIKE NORTON.

### The TITAN.

Circuit Court, S. D. New York.

[Affirming Case No. 12,667. Nowhere reported; opinion not now accessible.]

## Case No. 12,667.

### The SENATOR MIKE NORTON.

### The TITAN.

[10 Ben. 440.] [1]

District Court, S. D. New York. May, 1879.[2]

COLLISION — STEAMERS IN EAST RIVER — LIGHTS — WHISTLES.

1. A collision occurred in the evening of October 1, 1875, about off pier 1, East river, in New York harbor between two steamers, the T. and S. M. N. The T. was bound from pier 5, East river, to pier 14, North river, to lay up for the night. The S. M. N. had towed a bark in from sea and anchored her between Bedloe's Island and the Battery, and was bound for pier 16, East river. Both boats had their lights set and burning. The pilot of the T. averred that a ferryboat having passed ahead of him going to the northward, he ported his wheel following her up, and as she passed him he saw both the red and green lights of the S. M. N. ahead of him about 400 to 600 yards off, his boat at the time making seven or eight miles an hour; that he at once blew one whistle and ported his wheel and kept on a port wheel till the S. M. N. came in collision with the T., striking her on the port side nearly at right angles; that the S. M. N. answered his single whistle with a single whistle, but that her pilot starboarded his wheel instead of porting it, and that when the vessels were three or four lengths apart he rang his jingle bell to give the T. more speed, and if possible, get by. The story of the S. M. N. was, that she made the green light of the T. on her starboard bow, whereupon the pilot of the S. M. N. blew two whistles and put her wheel slightly to starboard, and that the T., after waiting about a minute, answered with one whistle and ported her wheel and ran across the course of the S. M. N. and thus caused the collision. Held, that it is difficult to believe that, after the pilot of the S. M. N. had answered the single whistle of the T. with a single whistle, he starboarded his wheel.

2. If the account of the pilot of the T. were true, he was in fault, because as soon as he saw that the S. M. N. after having answered his whistle with one whistle, was running down on him with a starboard wheel, he should at once have stopped and backed, instead of increasing his speed.

3. On the evidence, the S. M. N. blew two whistles before the T. blew one, and at that time the green light of the T. alone was visible, and the S. M. N. did not answer the single whistle of the T. with a single whistle.

4. The T. was solely in fault for the collision.

In admiralty.

R. D. Benedict, for the Titan.

W. R. Beebe, for the Norton.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case unreported.]